UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL VALENZUELA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 17-cv-8855 |
| | ) | |
| WEST & SONS TOWING, INC., | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | Magistrate Judge Daniel G. Martin |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff, DANIEL VALENZUELA, by and through his attorney, James P. McKay, Jr., complains against the Defendant, WEST & SONS TOWING, INC., as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1. This is an employment discrimination action brought by Plaintiff to redress violations of his rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. Sections 12101 *et seq.* Defendant discriminated against Plaintiff based on Plaintiff's disability by denying him reasonable accommodations, including failing to provide auxiliary aids and services; failing to provide effective communication during job training for Plaintiff; failing to provide effective communication during job performance and evaluation meetings for Plaintiff; taking adverse employment actions against Plaintiff; and discharging him from his employment. Plaintiff seeks lost wages, compensatory damages, punitive damages if allowed, prejudgment and post-judgement interest, and costs including expert witness fees.

## PARTIES

2. Plaintiff, DANIEL VALENZUELA ("Daniel"), is a citizen of the State of Illinois. He resides in the Northern District of Illinois, in Cook County, Illinois.

3. Defendant, WEST & SONS TOWING, INC., ("West") is a corporation doing business in the State of Illinois, incorporated in the State of Illinois and its principal place of business is located in Addison, DuPage County, Illinois.

4. At all times relevant, Daniel was employed by West from July, 2014 to October, 2016.

5. At all times relevant, West was an employer within the meaning of the ADA in that it was engaged in an industry affecting interstate commerce and employed more than 15 persons.

6. At all times relevant, Daniel was a qualified individual with a disability within the meaning of Title I of the ADA.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. Section 1331 in that Daniel's claims involve federal questions arising under the Americans with Disabilities Act, 42 U.S.C. Sections 12101 *et seq.*

8. All conditions precedent to suit have been met, as Daniel filed a timely Charge of Discrimination on or about November 21, 2016 with the Equal Employment Opportunity Commission ("EEOC"). A copy of said Charge was attached to Plaintiff's original Complaint filed with this Court on December 8, 2017.

9. On or about September 13, 2017, the EEOC issued a Notice of Right to Sue letter to Daniel. The EEOC found reasonable cause to believe that Defendant had violated the ADA regarding some or all of the matters that Daniel alleged in his Charge of Discrimination. A copy of the EEOC's Notice of Right to Sue letter was attached to Plaintiff's original Complaint filed with this Court on December 8, 2017.

10. Daniel filed this lawsuit *pro se* on December 8, 2017, within ninety days of receiving the Notice of Right to Sue letter.

11. Daniel's *pro bono* attorney is filing this First Amended Complaint pursuant to the Court's Order of April 18, 2018.

12. Venue is proper in this District pursuant to 28 U.S.C. Section 1391 because Daniel's claims arose out of acts and transactions that occurred within the Northern District of Illinois.

## FACTS

### I. Daniel Is A Person With A Disability As He Is Deaf.

13. When Daniel was three years old, he was diagnosed as being profoundly deaf.

14. Daniel cannot hear spoken English.

15. Daniel has difficulty readings lips and as such, lip reading is not an effective form of communication for Daniel.

16. Daniel's primary modes of communication include reading, writing and most effectively, the use of the American Sign Language ("ASL"), which has a different grammar and syntax than the English language.

17. Verbal communication with others is not possible as Daniel has a limited ability to speak in an understandable manner and has difficulties understanding what is said when people speak to him.

18. Due to his deafness, Daniel is substantially limited in the major life activities of hearing, speaking, communicating with others, and understanding spoken English.

19. Daniel is a person with a disability under the Americans with Disabilities Act (ADA).

20. Despite his disability, Daniel can drive motor vehicles. Like his father and uncle before him, Daniel became a tow truck driver.

21. Daniel has a valid Class C driver's license with the State of Illinois capable of driving vehicles up to 26,000 pounds.

22. Daniel is 39 years old and is married with children.

23. Daniel was hired by West to be one of their tow truck drivers in July of 2014.

24. West was aware of Daniel's disability at the time of hiring.

25. Throughout his employment with West, Daniel was a diligent, responsible and reliable employee.

## II. West Failed To Provide Effective Communication When Training Daniel

26. During his employment at West, Daniel requested a sign language interpreter for the limited purposes of training and meeting with the boss, Robert West, Jr., to discuss Daniel's job performance and evaluations. These requests were made by Daniel in writing or text messaging and made to Mr. West's administrative assistant, Roseanne.

27. The requests for accommodations of a sign language interpreter were reasonable.

28. Daniel's requests for these accommodations were denied.

29. In January of 2016, Daniel was required to attend training conducted by the Illinois Department of Transportation ("IDOT"). The subject of the training was Traffic Incident Management and it was offered to licensed tow truck drivers every two years by IDOT. The training included speakers from IDOT and other agencies such as the Professional Towing & Recovery Operators of Illinois and the Northeastern Illinois Public Safety Training Academy.

30. The speakers at this training seminar gave oral lectures during their power point presentations.

31. Prior to this training seminar, Daniel requested West to provide a sign language interpreter to assist him during the one-day training. Daniel's request was denied.

32. As a result, Daniel sat through this necessary training and could not hear what the speakers were saying.

33. Further, any videos shown during this training lacked closed captioning. Due to the lack of captioning or an interpreter, Daniel was unable to understand the videos or pictures displayed at this seminar.

34. In the spring of 2016, Daniel was required to attend an in-house training lecture at West. The topic involved the use of heavy towing trucks and recovery. The speaker employed a projector during the lecture and showed video images.

35. Prior to the lecture, Daniel requested West to provide a sign language interpreter to assist him during this one-day training. Daniel's request was denied.

36. As a result, Daniel sat through this necessary training and could not hear what the speaker was saying or understand what the video images meant.

37. West did not engage in an interactive process with Daniel to discuss appropriate reasonable accommodations, auxiliary aids, or methods to provide effective communication for the above training, all of which totaled only two days.

38. Instead, West unilaterally denied and ignored Daniel's requests, thereby discriminating against him even though they knew about his disability.

### III. West Failed To Provide Effective Communication When Warning Daniel About Job Performance

**39.** Daniel requested a sign language interpreter for the limited purpose of meeting with the boss to discuss his job performance and evaluations.

40. Because Daniel was such a reliable employee, no such meeting was necessary until September 12, 2016.

41. On or about September 12, 2016, West gave Daniel a written warning about allegedly leaving work an hour early and not turning in paperwork from the day before. For any other employee, a meeting would be conducted between the boss and employee. For Daniel, he was

5

required to respond in writing. Period.

42. Daniel wanted to meet with Mr. West to discuss the matter. Daniel's request to meet and further, his request for a sign language interpreter for that meeting were both denied.

43. As a result, Daniel did not have the opportunity to have the alleged incident explained to him or to present his side of the story in his language, the American Sign Language.

44. West's reliance on written communication was not an effective form of communication for the September 11, 2016 incident especially when Daniel strongly denied the allegations.

45. West did not engage in an interactive process with Daniel to discuss appropriate reasonable accommodations, auxiliary aids, or methods to provide effective communication for a brief meeting about job performance.

46. West's refusal to meet Daniel and discuss his job performance along with West's refusal to provide a sign language interpreter for a brief meeting, discriminated against Daniel simply because he was deaf.

### IV. West Took Adverse Actions Against Daniel And Failed To Provide Effective Communication When Terminating Him

47. After Daniel used the words "discrimination," "ADA" and "interpreter," in his limited written response to the September 11, 2016 incident, West was intent on terminating Daniel's employment. That day came a month later.

48. On or about October 20, 2016, West terminated Daniel in retaliation for his numerous requests for accommodations and Daniel's recognition of discrimination.

49. West pretended the employment discharge to be due to a dispute between Daniel and a co-worker, but that excuse was pretextual.

50. Videotape evidence exonerated Daniel regarding the alleged dispute, but nevertheless, West terminated Daniel but did not terminate the co-worker who was not disabled in any way.

51. No meeting was conducted between West and Daniel, with or without a sign language interpreter.  Daniel was banned from the Defendant's property

52. West's termination of Daniel was a discriminatory retaliation of Daniel's repeated requests for reasonable accommodations and West's intolerance of a disability they knew about the day they hired Daniel.

53. The actions of the Defendant violated Daniel's rights under the Americans with Disabilities Act.

## COUNT I

### Violations Of The Americans With Disabilities Act

54. Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or **termination of employees,** employee compensation, **job training,** and other terms, conditions and privileges of employment."
42 U.S.C. Section 12112(a); 29 C.F.R. Section 1630.4.  (Emphasis added).

55. The ADA requires an employer to provide reasonable accommodations to a qualified individual with a disability to enable him to perform the essential functions of his job.  42 U.S.C. Section 12112(5)(A); 29 C.F.R. Section 1630.2(b), (e), (g)(1).

56. The ADA requires an employer to provide auxiliary aids and services.  Auxiliary aids and services include qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments.  42 U.S.C. 12103(1)(A); C.F.R. Section 1630.2(5)(iii).

56. At all times relevant to this Complaint, Daniel was an "employee" of West within the meaning of the ADA.  42 U.S.C. Section 12111(4); 29 C.F.R. Section 1630.2(f).

7

57. Daniel is an individual with a "disability" in that he has a hearing impairment that substantially interferes with the major life activities of hearing, speaking, communication, interactivity with others and understanding the spoken word of others. 42 U.S.C. Section 12102(2)(A); 29 C.F.R. Section 1630.2(g)(1).

58. Daniel was and is a "qualified" individual with a disability because he had the skill, experience and expertise for the position of tow truck driver at West and was able to perform the essential functions of his job with West with or without accommodations. 42 U.S.C. Section 12111(8); 29 C.F.R. Section 1630.2(m), (n)(1).

59. Under the ADA, unlawful discrimination includes, but is not limited to, not making reasonable accommodations, 42 U.S.C. Section 12112(b)(5)(A); 29 C.F.R. Section 1630.9 or denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, including, "acquiring or modifying equipment" and "training materials and policies." 42 U.S.C. Sections 12111(9)(B), 12112(b)(5)(B); 29 C.F.R. Sections 1630.2(o)(2)(ii), 1630.9.

60. The accommodations Daniel requested did not impose an undue hardship on West, in that providing an ASL interpreter for only two training days plus a brief meeting with the boss regarding job performance did not rise to the level of "significant difficulty or expense." 42 U.S.C. Section 12111(10)(A).

61. West discriminated against Daniel in violation of the ADA by refusing to provide him with reasonable accommodations for job training, refusing to provide him with reasonable accommodations to explain job policies and job performance, refusing to engage in the interactive process to discuss appropriate reasonable accommodations, refusing to provide reasonable accommodations for disciplinary meetings and finally, terminating Daniel's

employment without a meeting and without reasonable accommodations in retaliation of his numerous requests for an ASL interpreter and his recognition of West's discriminatory practices.

62. As a result of West's unlawful actions, Daniel has been injured. Such injuries include, but are not limited to, lost wages, lost benefits, lost promotion opportunities, lost training opportunities, emotional and physical distress and suffering, and pecuniary losses.

**WHEREFORE,** Plaintiff DANIEL VALENZUELA requests that this Honorable Court:

A. Award Plaintiff all lost wages with interest, as appropriate;

B. Award Plaintiff compensatory damages;

C. Award Plaintiff punitive damages, if allowed by this Court;

D. Award Plaintiff costs, expenses, and expert witness fees;

E. Require Defendant to undergo training of all employees and managers on the ADA, disability awareness and the deaf culture; and

F. Grant Plaintiff such additional relief as the Court deems just and proper.

Respectfully submitted,

/s/ James P. McKay, Jr.

James P. McKay, Jr.
Attorney for Daniel Valenzuela

Law Offices of James P. McKay, Jr.
Attorney ID# 6187739
161 North Clark Street
Suite 3050
Chicago, Il 60601
(312) 835-8052 – cell
(312) 605-8800 – office
(312) 605-8808 – fax
jamespmckay@hotmail.com